IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARIBBEAN SOLAR ENERGY, LLC<br><br>**Plaintiff**<br><br>v.<br><br>EVOLUTION CARIBBEAN LOGISTICS LLC; PHREIGHTLGX, LLC; JOHN DOE; JANE DOE; INSURANCE COMPANIES ABC; CORPORATION XYZ.<br><br>**Defendants** | **CIVIL NO.** 23-1323(RAM) |

<u>**MEMORANDUM AND ORDER**</u>

RAUL M. ARIAS-MARXUACH, United States District Judge.

This matter comes before the Court on Plaintiff Caribbean Solar Energy LLC's *Motion to Remand*. (Docket No. 5). Having considered the briefing in support and opposition of the *Motion to Remand*, the Court hereby **REMANDS** this action to the Puerto Rico Court of First Instance, San Juan Superior Part, for lack of subject matter jurisdiction. Simply put, Defendants' invocation of the Harter Act, 46 U.S.C. §§ 3701-3707, does not grant this court removal jurisdiction because there is neither an embedded federal question nor complete preemption.

I. **BACKGROUND**

This is an action for breach of a contract of carriage brought by Caribbean Solar Energy, LLC ("Caribbean Solar") against Evolution Caribbean Logistics LLC ("Evolution") and PhreightLGX,

LLC ("PhreightLGX"). (Docket 1-1). All these entities are purportedly limited liability companies with offices in Puerto Rico. Id. at ¶¶ 1-2.

According to the *Complaint*, Caribbean Solar entered a contract with Evolution to arrange for the transport of two containers bearing solar panels from Fresno, California to San Juan, Puerto Rico. Id. at ¶ 8. This prime contract devolved into a series of subcontracts which included PhreightLGX and two trucking companies charged with transporting the containers by land from Fresno to Jacksonville, Florida. Id. at ¶¶ 9-10. Once in Jacksonville, the containers were to be loaded onto a Tote Maritime vessel for waterborne transport to San Juan. Id. at ¶ 9. The *Complaint* avers that containers were delivered to truckers but never made it to the Sunshine State and Tote Maritime's vessel. Id. at ¶ 10. Lastly, the *Complaint* seeks $375,936 in damages and invokes the Puerto Rico Civil Code's general contract provisions, the Puerto Rico Commerce Code's provisions regulating contracts for carriage of goods by land, and the Puerto Rico Commercial Transactions Act's provisions on bills of lading. Id. ¶¶ 23-37.

Defendants Evolution and Phreight filed a *Notice of Removal*. (Docket No. 1). Defendants argued that removal is proper under 28 U.S.C. § 1441 because the Harter Act, 46 U.S.C. §§ 3701-3707, which is a statute regulating commerce, applies and the Court has original jurisdiction under 28 U.S.C. § 1337. Id. at 6-7.

Defendants further argued that Plaintiff's characterization of the action as arising under the Puerto Rico Commerce Code is not controlling. Id. at 7.

Caribbean Solar filed a *Motion to Remand*. (Docket No. 5). Plaintiff asserted that this Court lacks subject matter jurisdiction because there is no federal issue within the four corners of the complaint and at best, the Harter Act provides a defense. (Docket No. 5 at 5). Plaintiff also argued that the Harter Act does not completely preempt state law to provide a basis for removal. Id. at 7-10. Lastly, Plaintiff claimed that the "saving to suitors" clause in 28 U.S.C. § 1331(1) allowed Caribbean Solar to choose between filing their case in state or federal court and requested costs and expenses for improvident removal. Id. at 11-14.

Defendants filed an *Opposition to Motion For Remand*. (Docket No. 7). Defendants reiterated their contention that Plaintiff's claims are governed by the Harter Act as they "arise out of a contract of carriage between the mainland United States and Puerto Rico for the loss of cargo before it was loaded on the vessel" and thus the Court had original jurisdiction. Id. at 3. Defendants also asserted that they did not invoke the Court's Admiralty jurisdiction as grounds for removal and thus the case was not within the scope of 28 U.S.C. § 1331(1)'s "saving to suitors" clause. Id. at 9-12.

Lastly, Plaintiff filed a *Reply to Defendants' "Opposition to Motion for Remand*. (Docket No. 10). Plaintiff reiterated the "Saving to Suitors" clause" protected its choice of a state forum. Id. at 2-8.

## II.   APPLICABLE LAW

### A. Standard of Review for Removals

Pursuant to the federal removal statute 28 U.S.C § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." For a district court to have original jurisdiction over a civil action, it must be determined that "the case could have been filed originally in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction." Villegas v. Magic Transp., Inc., 641 F. Supp. 2d 108, 110 (D.P.R. 2009) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-393 (1987)).

If the propriety of a removal petition is questioned, "**the removing party bears the burden of showing that removal is proper**." Id. (citing Danca v. Private Health Care Systems, 185 F.3d 1, 4 (1st Cir. 1999)) (emphasis added). The First Circuit has held that due to this burden and the federalism concerns that arise when considering removal jurisdiction, "ambiguity as to the source of

the law ... ought to be resolved against removal." Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004). *See also* Asociacion de Detallistas de Gasolina de Puerto Rico, Inc. v. Shell Chem. Yabucoa, Inc., 380 F. Supp. 2d 40, 43 (D.P.R. 2005) ("When plaintiff and defendant clash about jurisdiction, uncertainties are construed in favor of remand.").

**B. The Well-Pleaded Complaint Rule & Exceptions**

Ordinarily, a plaintiff is considered the "master of the complaint." Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002). As such, the well-pleaded complaint rule enables plaintiffs to have their cause of action heard in state court by "eschewing claims based on federal law." Caterpillar Inc. v. Williams, 482 U.S. 386, 398-399 (1987). In other words, **if the allegations presented in the complaint are premised only on local law, the claim cannot be deemed to have arisen under federal law and the case cannot be removed.** *See* Negron-Fuentes v. UPS Supply Chain Sols., 532 F.3d 1, 6 (1st Cir. 2008) and Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG., 510 F.3d 77, 93 (1st Cir. 2007). *See also* Villegas, 641 F. Supp. 2d at 112-13 ("Plaintiff recognized that he could have asserted a claim under federal law [but] exercised his discretion to decline to do so.")

However, there are exceptions to the well-pleaded complaint rule. One such exception is comprised by "embedded federal

questions." "[C]ertain state claims are subject to removal, even if they purport to rest only on state law, because the subject matter is powerfully preempted by federal law, which offers some 'substitute' cause of action." Negron-Fuentes, 532 F.3d at 6. Similarly, "[e]ven though state law creates [plaintiff's] causes of action, [their] case **might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties**." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 13 (1983). (emphasis added). This occurs on rare occasions where the asserted state law claims contain an "embedded federal question" that gives rise to federal subject matter jurisdiction; also referred to as the "federal ingredient" doctrine. *See* Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Env't Mgmt., 585 F.3d 42, 48 (1st Cir. 2009). One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013). An embedded federal question exists "in a 'special and small category of cases' where a 'state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" One & Ken Valley, 716 F.3d at 224 (quoting Gunn v. Minton, 568 U.S. 251, 258, (2013)).

Thus, pursuant to the well-pleaded complaint rule, for removal to be proper, the "complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." Rhode Island Fishermen's All., Inc., 585 F.3d at 48 (citations omitted). Importantly, "[t]he existence of a federal defense to a state-law cause of action will not suffice." Id. (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152).

Another exception to the well-pleaded complaint rule is "complete preemption". As explained by the United States Court of Appeals for the First Circuit, "[c]omplete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim." Fayard v. Northeast Vehicle Services, LLC, 533 F.3d 42, 45 (1st Cir. 2008) (citations omitted) (emphasis in original). A federal claim is removable to a district court under 28 U.S.C. § 1331's grant of federal question jurisdiction. However, "ordinary preemption—*i.e.,* that a state claim conflicts with a federal statute—is merely a *defense* and is not a basis for removal." Id. Notably, complete preemption has been characterized by the Supreme Court as a "narrow exception." Id. at 48 (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 5 (2003)).

## III. DISCUSSION

As the master of its *Complaint*, Plaintiff chose to aver claims exclusively invoking Puerto Rico law. Pursuant to the well-pleaded complaint rule, Plaintiff's claims **are not** removable unless an additional independent basis for federal jurisdiction exists, or the claims are preempted by federal law. *See* Negron-Fuentes, 532 F.3d at 6 and Tenn. Gas Pipeline, 87 F.3d at 153.

### A. There is no embedded federal question.

When evaluating the existence of an embedded federal question, district courts are tasked with follow[ing] "the three-step progression" articulated by the Supreme Court's decision in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005). First, the court must "start with the most pressing concern: whether the plaintiffs' well-pleaded complaint necessarily raises a federal question." Rhode Island Fishermen's All., Inc., 585 F.3d at 49. If so, the court must determine "whether the federal question is actually disputed and substantial." Id. Lastly, "if the question survives scrutiny on these points," the court "consider[s] whether that question is one that a federal court may entertain without impermissibly tilting the balance of federal and state judicial responsibilities." Id.

Other than a talismanic invocation of the Harter Act, **Defendants have not identified any specific federal question purportedly raised by Plaintiff's *Complaint*.** Defendants did not

even explain how the Harter Act applies to this case in which the *Complaint* avers the goods were allegedly lost inland **prior** to delivery to the Tote Maritime vessel. (Docket Nos. 1 and 7).

The Harter Act, 46 U.S.C. 3701-3707, is a maritime law that "solely regulates the liability of sea going carriers". Abbot Chemical, Inc. v. Molinos de Puerto Rico, Inc., 62 F.Supp. 2d 441, 448 (D.P.R. 1999). It governs the carriage of goods by sea from a domestic port and regulates the liability of the owner, manager, charter, agent, or master of a vessel. *See* 46 U.S.C. 30701 (defining the term "carrier"); 46 U.S.C. 30702(a) ("this chapter applies to a carrier engaged in the carriage of goods to or from any port in the United States."). "**The Harter Act is applicable to a carrier's liability pursuant to an intermodal contract such as the one at issue here only to the extent that the obligations claimed to be violated are maritime**." *See* Abbott Chemical, 62 F.Supp.2d at 448 (emphasis added).

The Harter Act does not extend to inland carriage unless the parties extend its provisions in a bill of lading. *See* Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d. 587, 594 (5th Cir. 2000). Here, Defendants did not spill any ink to shed light on whether such an extension occurred. Given that Plaintiff's well-pleaded complaint does not perforce raise a federal question, the Court need not analyze the two remaining factors. *See* Rhode Island Fishermen's All., Inc., 585 F.3d at 49.

**B. Complete preemption does not apply.**

In their *Opposition to the Motion for Remand,* Defendants argued that that Harter Act "preempts" Plaintiff's state law claims and therefore the case is removable. (Docket No. 7 at 4). While not expressly labeled as such, Defendants' argument smacks of "complete preemption". (Docket No. 1). But despite having the burden of proof on removal, Defendants made no attempt to explain how the Harter Act would "completely preempt" Plaintiff's claims.

Defendants repeatedly cited the Fifth Circuit's Opinion in Uncle Ben's v. Hapag-Lloyd Aktiengesellschaft, 855 F.2d 215 (5th Cir. 1988). (Docket No. 7 at 4). But in Uncle Ben's, the Fifth Circuit did not hold that the "complete preemption" doctrine applied to the Harter Act nor did it undertake a detailed analysis to articulate the existence of a "narrow exception" to the well-pleaded complaint rule. *See* Uncle Ben's v. Hapag-Lloyd Aktiengesellschaft, 855 F.3d 215 (5th Cir. 1988); Hemphill v. Transfresh Corp., 1998 WL 320840 at *3 (N.D. Cal. 1998) ("The *Uncle Ben's* court never held that the Harter Act completely preempted state law causes of action").

Defendants did not cite any Supreme Court or First Circuit precedent for the proposition that the Harter Act "completely preempts" state law claims and provides a basis for removal despite the strictures of the well-pleaded complaint rule. Nor has the Court found any. Federalism and comity concerns warrant that

"absent clear direction to the contrary . . . the wiser course is to maximize [Plaintiff's] choice of forum and the type of claims [Plaintiff] chooses to bring." Mangual-Saez v. Brilliant-Globe Logistics, 2005 WL 290155 at * 10 (D.P.R. 2005) (declining to find the Harter Act completely preempts all state claims and remedies in the absence of Supreme Court or First Circuit precedent on the issue).

**C. The Court need not discuss the "saving to suitors" clause.**

Because Defendants did not invoke admiralty jurisdiction under 28 U.S.C. § 1331, the Court need not reach Plaintiff's argument concerning 28 U.S.C. § 1331(1) "saving to suitors" clause which allows prosecution of *in personam* maritime claims in State courts. *See* Iturrrino Carillo v. Marina Puerto Rico Del Rey Operations, LLC., 432 F.Supp. 3d 7, 10 (D.P.R. 2019).

**IV. CONCLUSION**

Considering the above, the Court **GRANTS** Plaintiff's *Motion to Remand* at Docket No. 5 and **ORDERS** that the case be remanded to the Puerto Rico Court of First Instance, San Juan Superior Part, case caption and number Caribbean Solar Energy, LLC v. Evolution Caribbean Logistics LLC y otros, Civil Núm. SJ2023CV04000.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 12th day of February 2024.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge